IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ANITA J. CROOKS,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-0019

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................. 2

II.  PROCEDURAL BACKGROUND ............................... 2

III. PRINCIPLES OF REVIEW .................................... 3

IV. STATEMENT OF FACTS ...................................... 4
    A.   Educational and Vocational Factors ..................... 4
    B.   Administrative Hearing Testimony and Medical History ......... 5

V.  CONCLUSIONS OF LAW ..................................... 8
    A.   The ALJ's Disability Determination ..................... 8
    B.   Particular Objections Raised by Claimant ................ 12
        1.   The ALJ properly found Plaintiff's fibromyalgia was a non-
            severe impairment ................................ 12
        2.   The ALJ properly discounted the credibility of Plaintiff's
            subjective allegations .............................. 13
        3.   The ALJ properly considered the Evidence on Credibility of
            the husband .................................... 17

VI. CONCLUSION ............................................... 18

VII. ORDER .................................................... 18

## I. INTRODUCTION

This matter comes before the Court on the complaint (docket number 1) filed by Plaintiff Anita J. Crooks on March 11, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Ms. Crooks asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Crooks requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On September 21, 2009, Crooks applied for disability insurance benefits. In her application, Crooks alleged an inability to work since September 3, 2008 due to lupus osteoporosis, migraines, lupus, extreme fatigue, joint trouble and depression. (Tr. 165). Crooks' application was denied on January 29, 2010. (Tr. 73). On June 29, 2010, her application was denied on reconsideration. (Tr. 80). On November 16, 2011, Crooks appeared before Administrative Law Judge ("ALJ") Julie Bruntz for an administrative hearing. In a decision dated December 8, 2011, the ALJ denied Crooks' claim. The ALJ determined that Crooks was not entitled to disability insurance benefits because she was functionally capable of performing her past relevant work, which was as an administrative clerk and a telephone solicitor. Crooks appealed the ALJ's decision. On January 11, 2013, the Appeals Council affirmed the ALJ's decision. Consequently, the ALJ's December 8, 2011 decision was adopted as the Commissioner's final decision.

On March 11, 2013, Crooks filed this action for judicial review. The Commissioner filed an Answer on May 29, 2013. On July 1, 2013, Crooks filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing her past work. On August 28, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On April 8, 2013,

2

both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, § 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive. . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citations omitted). Substantial evidence is defined as "less than preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue,* 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

3

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion." *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)).

## IV. STATEMENT OF FACTS

### A. Educational and Vocational Factors

Plaintiff was born in 1958, attended college for three years, and completed a certificate in ministry. (Tr. 64, 170, 179). She has worked as an administrative assistant and as a telemarketer. (Tr. 27). Plaintiff alleges that she became disabled beginning September 3, 2008. That was the time at which she stopped working in order to care for

4

her mother-in-law, with whom she then lived. (Tr. 165, 204, 268). She alleges disability due to lupus osteoporosis, migraines, lupus, extreme fatigue, joint trouble, and depression. (Tr. 165).

### B. Administrative Hearing Testimony and Medical History

Soon after she applied for disability benefits, Plaintiff testified that she took care of her husband and their family dog; had no problem handling her own personal care; cooked; did laundry; cleaned house; and did some gardening. (Tr. 174-75). She testified that she drove a car; shopped for groceries and clothing; handled her own finances; and enjoyed reading, listening to music, and participating in church activities. (Tr. 176-77). Plaintiff said she could follow written instructions, get along with authority figures, and handle stress. (Tr. 178-79). Plaintiff testified that she had recently become more forgetful, and struggled to keep her concentration. (Tr. 178, 200). Plaintiff also testified that she experienced pain and fatigue for most of every day, in all areas of her body. (Tr. 198). She said she had migraines about twice a week, with each headache lasting between two hours and two days. (Tr. 202).

Plaintiff's husband testified that Plaintiff maintained their home, cooked meals, took care of their dog, shopped, and handled financial matters, but noted that she could no longer walk long distances, dance, or mow the lawn. (Tr. 190-93). Plaintiff's husband also testified that because of Plaintiff's condition, they were careful where they went and what they did while on vacations. (Tr. 237).

In February 2009, Plaintiff went to Maria Doce, M.D. for vaccinations for her upcoming missionary trip to Haiti to help build homes in small villages there. (Tr. 253). After she returned from her trip to Haiti, Plaintiff went to Dr. Doce again, complaining that Tylenol was insufficient to address her joint pain. (Tr. 47-48, 310). Dr. Doce noted that Plaintiff was happy with her new home, because she could harvest raspberries and strawberries. (Tr. 310). Plaintiff described herself as a homemaker, and discussed making her own bread and "ministering to a number of groups." (Tr. 310). On physical

examination, Dr. Doce found Plaintiff moved from a seated position to the exam table with minimal discomfort, and her hips showed fairly good range of motion. (Tr. 310).

On December 30, 2009, George Kappos, M.D. conducted a consultative examination for disability assessment purposes. (Tr. 267-75). Plaintiff reported she had been diagnosed with osteoporosis the previous summer by Dr. Doce and that she had received some relief from medication for that condition. (Tr. 267). Plaintiff also claimed to have been diagnosed with fibromyalgia one month earlier by another doctor, but that she had not been given any treatment for that condition. (Tr. 267). Plaintiff further reported that she had seven to ten migraines per month, and that each headache lasted from one to three days. (Tr. 268). Dr. Kappos noted that Plaintiff had not been assigned any restrictions by physicians, and that she did not require any assistive devices. (Tr. 269).

On physical examination, Dr. Kappas found that Plaintiff "moved about the room with an easy gait," and could heel and toe walk, squat, and get on and off the examination table without difficulties. (Tr. 269). Plaintiff's straight-leg-raising was negative for both legs; she had no hip pain with palpation; and her grip strengths were strong and equal. (Tr. 270). Dr. Kappas opined that Plaintiff should not use vibratory tools, due to some concerns about repetitive use disorder. (Tr. 271).

Plaintiff returned to Dr. Doce on January 11, 2010, complaining of generalized muscle aches and pains. (Tr. 310). At that time, Plaintiff said she took only Tylenol for her pain. (Tr. 310). The following month, Dr. Doce noted that Plaintiff's migraine medication, Imitrex, had not been refilled since 2005. (Tr. 298).

Also in January 2010, C. David Smith, M.D., a state agency medical consultant, reviewed Plaintiff's medical history. (Tr. 290). Dr. Smith found that Plaintiff's history of headaches showed that her symptoms responded to medication and were not intense or frequent enough to qualify as a "severe" medical diagnosis. (Tr. 290). Dr. Smith

found no documented evidence of medically determinable impairments in Plaintiff's hand and leg joints, and no diagnoses of fibromyalgia or extreme fatigue. (Tr. 290).

On June 8, 2010, Plaintiff presented to Nasser Azeez, M.D. to establish care. (Tr. 315-19). She complained of generalized fatigue, but reported she had been sleeping well. (Tr. 315). Plaintiff told Dr. Azeez she suffered from migraine headaches, and that Imitrex had been effective in treating her symptoms, but that she was not currently on any migraine medication. (Tr. 315). Dr. Azeez's physical examination revealed no significant findings with respect to her wrists, fingers, ankles, or knees, but did show points of tenderness associated with fibromyalgia. (Tr. 316). He prescribed Imitrex to treat Plaintiff's migraines. (Tr. 316).

Also in June 2010, John May, M.D. reviewed Plaintiff's medical file at the reconsideration stage. (Tr. 321). Dr. May noted that Dr. Azeez's musculoskeletal examination revealed no significant findings, and that Plaintiff had not been on any migraine medication (Tr. 321). Dr. May opined that Plaintiff had medical diagnoses of obesity, migraine, and fibromyalgia, each of which were non-severe. (Tr. 321).

In January 2011, Petar Lenart, M.D., a rheumatologist referred by Dr. Azeez, examined Plaintiff regarding her joint pain, family history of rheumatoid arthritis, and concerns she might have lupus. (Tr. 327-35). Plaintiff told Dr. Lenart she had problems with migraine headaches in her left temporal region, two or three times per month, and that her headaches did not cause a change in vision. (Tr. 327). Dr. Lenart diagnosed Plaintiff with fibromyalgia, in response to which he increased her medication and recommended daily exercise, especially pool therapy. (Tr. 332).

At her November 16, 2011 hearing, Plaintiff testified that she quit working around September 3, 2008 because of an increase in pain and issues with mobility. (Tr. 36-37, 48). Plaintiff explained she had been unable to participate in home building while on her missionary trip to Haiti and that she could no longer work in the garden

as she used to do. (Tr. 48-49). She told the ALJ that she typically spent most of the day "in a prone position." (Tr. 50).

Plaintiff testified that she had migraine headaches up to eight times per month, and that each migraine usually lasted for about three days. (Tr. 38-39). She said she had not seen a neurologist for her migraines, and that her treating physicians have treated her symptoms with Imitrex. (Tr. 39-40). Plaintiff's husband of seventeen years also testified, stating that Plaintiff's migraines sometimes led to "bad weeks" during which all household chores fell to him. (Tr. 52, 54). Plaintiff said her fibromyalgia caused fatigue and chronic pain, and that medication and exercise had been somewhat helpful in addressing those symptoms. (Tr. 43-44).

A vocational expert, Carmen Mitchell, also testified at the hearing. (Tr. 56-62). She testified that a hypothetical person of Plaintiff's age, education, and work experience, who was restricted to light work with no exposure to vibrations, could perform her past work as an administrative clerk or a telephone solicitor. (Tr. 60). The expert further testified that such a person could also perform a range of other light, unskilled jobs in the national economy, including information clerk, unskilled mail clerk, and office helper. (Tr. 61).

## V. CONCLUSIONS OF LAW

### A. The ALJ's Disability Determination

A claimant's RFC is the most she can do despite the combined effect of her credible limitations. *See* 20 C.F.R. § 404.1545. It is the claimant's burden to prove her RFC, and it is the ALJ's responsibility to determine RFC based on all relevant evidence in the record. *See Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004) (citing *Depover v. Barnhart*, 349 F.3d 563, 565 (8th Cir. 2003)); *McKinney*, 228 F.3d at 863 ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.").

8

In this case, the ALJ determined that Plaintiff suffered from the severe impairments of obesity and migraines. (Tr. 14). The ALJ, based on the medical evidence and the testimony of the vocational expert, found that Plaintiff retained the capacity to perform light work, except that she could have no exposure to vibrations. (Tr. 15). *See* 20 C.F.R. § 404.1567(b) (defining "light work").

In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the

> impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC (residual functional capacity), age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The Commissioner's regulations and rulings address the manner in which an ALJ must consider medical opinion evidence when determining RFC. *See* 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188 (S.S.A. 1996). Under these policies, even treating physicians' opinions are entitled to weight only to the extent they find support in the record. *See Davidson v. Astrue*, 501 F.3d 987, 991 (8th Cir. 2007) ("'(A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount'

a treating physician's RFC." (quoting *Goff*, 421 F.3d at 790-91)). This is especially true, even necessarily true, when multiple treating physicians reach opposing conclusions, as they did here. Ultimately, it is up to the ALJ to determine the weight each medical opinion is due. *See Hacker,* 459 F.3d at 936 ("It [is] the ALJ's task to resolve conflicts in the evidence").

The ALJ gave significant weight to Drs. Smith and May, both of whom opined that Plaintiff had not proven the existence of any severe physical impairments. (Tr. 19-20, 290, 321). The ALJ found the opinions of Dr. Kappos to be "only somewhat consistent with the record of evidence," but still worthy of some weight. (Tr. 17-18, 267-75). Plaintiff's brief raises no concerns related to the ALJ's weighing of medical opinions.

In this case, the ALJ determined that this Plaintiff's migraine headaches, though severe, were not disabling. (Tr. 14, 22). In reaching her decision, the ALJ noted discrepancies in Plaintiff's self-reports of the frequency of her headaches; the fact that she left her Imitrex prescription unfilled for a period of years; and her willingness to rely upon over-the-counter treatment (Tr. 21). This behavior does not conform to what one would expect of a claimant facing a disabling impairment. It was plainly within the ALJ's discretion to find Plaintiff's migraines were not disabling, and her determination is supported by the weight of the evidence.

An ALJ's RFC finding must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See* SSR 96-8p, 1996 WL 374184 (S.S.A. 1996). The ALJ did this. In making her RFC determination, the ALJ considered all of Plaintiff's symptoms, along with the medical opinion evidence, in accordance with the Commissioner's rules and regulations (Tr. 15-22). The decision also included a discussion of Plaintiff's non-severe and non-medically determinable impairments, which further explained the reasoning process behind the ALJ's findings

(Tr. 14-15). The ALJ properly linked her findings with the relevant evidence (Tr. 14-22).

The ALJ properly weighed the evidence and assigned limitations to account for Plaintiff's credible restrictions. Substantial evidence supports her assessment. The ALJ's RFC finding should be affirmed.

### B. Particular Objections Raised by Claimant

#### 1. The ALJ properly found Plaintiff's fibromyalgia was a non-severe impairment

Plaintiff argues that the ALJ erred by failing to find her fibromyalgia as a severe impairment. *See* Pl.'s Br. at 6-9. Substantial evidence on the record as a whole supports that finding that it was not severe.

At the second step of the sequential evaluation, the ALJ must determine whether the claimant has a "severe" impairment that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. § 404.1509 (describing durational requirements), § 404.1520(a)(4)(ii) (describing step two). An impairment is severe if it imposes more than a minimal limitation on the claimant's ability to function. *See* 20 C.F.R. § 404.1521(a) (defining "non-severe" impairments); SSR 96-3p. If the claimant has a severe impairment or combination of impairments, the ALJ will proceed to step three of the sequential evaluation. *See* 20 C.F.R. § 404.1520(a)(4). If not, the ALJ must find the claimant "not disabled." *Id.*

The court finds that the ALJ's non-severity findings were correct. The ALJ explicitly considered the evidence and determined that Plaintiff's symptoms had no more than a minimal effect on her ability to perform basic mental work activities. (Tr. 14). In December 2009, Dr. Kappos noted that, although Plaintiff claimed to have been diagnosed with fibromyalgia the previous month, she had neither sought nor received treatment for the condition. (Tr. 17, 267). Dr. Kappos also found that Plaintiff "moved about the room with an easy gait," could heel and toe walk, could squat, and could get

on and off the examination table without difficulty. (Tr. 17, 269). Dr. Kappos further noted that although no physician had placed Plaintiff under any physical restrictions, he believed she should avoid vibratory tool use, out of a concern related to repetitive use disorder. (Tr. 17, 269, 271). The ALJ adopted the limitation Dr. Kappos advocated by including in the RFC a restriction against Plaintiff being exposed to vibrations. (Tr. 15). Dr. Lenart, the rheumatologist, also diagnosed Plaintiff with fibromyalgia. His treatment suggestion, daily exercise and ongoing management by Plaintiff's primary care physician, did not indicate the presence of a "severe" impairment that would prevent Plaintiff from performing substantial gainful activity. (Tr. 20, 332).

There is no evidence in the record that shows the ALJ erred with respect to evaluating the medically determinable nature or severity of her impairments, nor has Plaintiff's counsel pointed to any. Since the ALJ's findings were supported by substantial evidence, they will be affirmed.

### 2. The ALJ properly discounted the credibility of Plaintiff's subjective allegations

After reviewing the entire record, the ALJ found that Plaintiff's statements about her symptoms were not entirely credible. (Tr. 15-22). The ALJ explained numerous reasons for her determination, and the record supports her conclusions. The Commissioner's regulations direct an ALJ to give reasons if, as in this case, she does not fully credit the claimant's testimony. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529 (discussing the process for evaluating symptoms); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. 1996) (discussing credibility). The ALJ found Plaintiff's complaints not entirely credible for several reasons, including: the absence of objective medical evidence to corroborate Plaintiff's claims; the minimal treatment Plaintiff received during much of the relevant period; the fact that medication and therapy have proven effective in controlling Plaintiff's symptoms; her activities of daily living; and evidence that Plaintiff's decision not to work

13

was independent of her alleged disability. Because substantial evidence supports the ALJ's decision to discount Plaintiff's subjective complaints, the Court will affirm the ALJ's credibility finding. *See Perks,* 687 F.3d at 1093 (citing *Eichelberger v. Barnhart,* 390 F.3d 584, 590 (8th Cir. 2004)).

The ALJ found that objective medical evidence did not support the severity of Plaintiff's alleged symptoms (Tr. 17-19). While an ALJ may not reject a claimant's subjective complaints solely for lack of objective medical evidence, the ALJ may consider the absence of objective medical evidence supporting the degree of severity alleged. *See Gonzales v. Barnhart,* 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary" (quoting *Ramirez v. Barnhart,* 292 F.3d 576, 581 (8th Cir. 2002) (internal citation omitted)); 20 C.F.R. § 404.1529(c)(2) (the agency will consider "objective medical evidence" when evaluating symptoms). Dr. Kappos found Plaintiff "moved about the room with an easy gait;" could heel and toe walk, squat, and get on and off the examination table without difficulties; had negative straight-leg-raising results; and strong, equal grip strength. (Tr. 17, 269-70). Dr. Azeez's physical examination revealed no significant findings with respect to Plaintiff's wrists, fingers, ankles, or knees. (Tr. 20, 316). The ALJ properly took these objective results into account when assessing Plaintiff's credibility.

Plaintiff alleges a number of different impairments, the combination of which she claims leaves her disabled, but the record shows she has sought minimal treatment for most of these conditions. A claimant's allegations of disabling pain or other subjective symptoms may be discredited by evidence that the claimant has received minimal or sporadic medical treatment when compared to the type of symptoms he alleges. *See Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations . . . , limited treatment of symptoms, [and] failure to diligently seek medical care");

*Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegation of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."); 20 C.F.R. § 404.1529(c)(3)(v) (the agency will consider the claimant's treatment when evaluating his symptoms).

Plaintiff was diagnosed with fibromyalgia in November 2009, but the following month she told Dr. Kappos she had not sought treatment for that condition and that she was not seeing any physician to address those symptoms. (Tr. 17, 267). Despite her alleged depression, Plaintiff did not seek treatment from any mental health professionals. (Tr. 19, 46, 288). Although she alleged severe migraine headaches that left her virtually incapacitated for days at a time, Plaintiff did not see a neurologist to address her symptoms. Perhaps most tellingly, she did not refill her prescription medication for a five-year period, relying instead on over-the-counter pain relievers. (Tr. 20-21, 39, 298, 315). *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions . . . including failing to take prescription medications [and] seek treatment") (citing *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001); *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999); *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir. 1996)). The ALJ properly noted that such "discrepancies between the record and [Plaintiff's] statements tend[ed] to erode her credibility." (Tr. 21).

Moreover, the record shows that when Plaintiff in fact took her medication, it was effective at treating her migraine symptoms. (Tr. 17, 19-20). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)). *See also Collins ex rei. Williams v. Barnhart*, 335 F.3d 726, 729-30 (8th Cir. 2003) ("[I]mpairments that are controllable by medication do not support a finding of total disability."); 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (the agency will consider

the claimant's treatment and medication when evaluating her symptoms). Plaintiff received prescriptions for Imitrex from her treating physicians, and she told Dr. Azeez that the medication had been effective in treating her headache symptoms. (Tr. 39-40, 315). Plaintiff's failure to use medication that she admits has been useful in the past in alleviating her allegedly disabling pain calls into question the severity of her symptoms.

The ALJ found that Plaintiff's daily activities reduced the credibility of her allegations. (Tr. 21). An ALJ may properly consider a claimant's daily activities as one part of his credibility analysis. *See Medhaug v. Astrue,* 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (caring for a child, driving, fixing simple meals, doing housework, and shopping for groceries held to be "extensive daily activities" that did not support claimant's alleged inability to work); 20 C.F.R. § 404.1529(c)(3)(I) (an ALJ must consider the claimant's "daily activities" when evaluating her symptoms). Plaintiff's function report indicated that she took care of her husband; handled her own personal care; cooked; did laundry; cleaned; did some gardening; drove a car; shopped for groceries and clothing; handled her own finances; and enjoyed reading, listening to music, and participating in church activities. (Tr. 21, 174-77). Plaintiff's ability to perform these daily activities reduced the credibility of her claim that she experienced pain and fatigue for most of every day, in all areas of her body (Tr. 198), and her testimony that she typically spent most of the day "in a prone position." (Tr. 50).

Plaintiff admitted that she left her last job to care for an ill family member. (Tr. 165, 204, 268). *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition."). Plaintiff's admission that she left her job for reasons unrelated

to her alleged impairments does not support her claim that she was unemployable due to disabling symptoms.

Further, Plaintiff's ability to travel to Haiti and to conduct other ministry work on a part-time basis, for a period of years after her alleged disability began, further detracted from the credibility of her allegations (Tr. 21, 47-49, 253, 310). *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ may properly note Plaintiff's work activity during a period of time in which she alleges disability as a significant factor in finding Plaintiff not credible. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) (among other factors, claimant worked ten hours per week in a catering business); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (not unreasonable for ALJ to note that claimant's part-time work was inconsistent with claim of disabling pain). Plaintiff's work-related behavior appeared to be independent of her alleged disability, raising questions as to whether her unemployment was due to an *inability* to work, or to other factors. (Tr. 21).

There is no evidence in the record that shows the ALJ erred with respect to discounting the credibility of Plaintiff's subjective allegations. Since the ALJ's findings were supported by substantial evidence, they will be affirmed.

### 3. *The ALJ properly considered the Evidence on Credibility of the husband*

Plaintiff argues that the ALJ erred by failing to consider the third-party evidence provided by her husband as part of her credibility determination. *See* Pl's. Br. at 13-16. This argument is without merit. The ALJ explicitly considered the third-party evidence provided by Plaintiff's husband, but provided two good reasons why it should not be considered *as strong evidence* in Plaintiff's favor. (Tr. 21). By claiming instead that the ALJ "found that she could not *consider this testimony*" (emphasis added), Plaintiff misrepresents the ALJ's analysis. *See* Pl.'s Br. at 13.

One of the ALJ's reasons for discounting the third-party evidence, namely, that it relies in part on Plaintiff's own subjective complaints, which are themselves lacking in credibility, is acknowledged in Plaintiff's brief: "Courts have long held an ALJ does not have to address witness testimony if it has been discredited by the same evidence as the claimant's testimony." *See* Pl.'s Br. at 15. Plaintiff attempts to argue that her husband's testimony *did not* rely on such evidence, but that is plainly false. If Plaintiff's complaints were not credible, then neither was the account of her husband, whose understanding of her condition had necessarily been influenced by those non-credible complaints. (Tr. 21). In addition, the ALJ explained that even if Plaintiff's daily activities were as limited as her husband claimed, the relatively weak medical evidence and other factors made it difficult to attribute those limitations to Plaintiff's alleged impairments. For those reasons, the ALJ noted, the third-party statements of the husband were not "strong evidence in favor of finding [Plaintiff] disabled." *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).

There is no evidence in the record that shows the ALJ erred with respect to considering the evidence on the credibility of the husband. Since the ALJ's findings were supported by substantial evidence, they will be affirmed.

## VI. CONCLUSION

The Court finds that the ALJ made a proper RFC determination based on a full and fairly developed record. The Court also finds that the ALJ properly found Plaintiff's fibromyalgia was non-severe and properly measured her credibility and that of her husband. Accordingly, and without minimizing the seriousness of Plaintiff's impairments, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 18th day of November, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA